UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ZACKARIAH JEREMIAH BENNETT,<br><br>Plaintiff,<br><br>v.<br><br>KING COUNTY JAIL HEALTH SERVICES, et al.,<br><br>Defendants. | NO.  C12-1931-JCC-JPD<br><br><br>REPORT AND RECOMMENDATION |

I.     INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Zackariah Jeremiah Bennett, a prisoner incarcerated at the King County Correctional Facility, is proceeding *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action against the King County Jail – Health Services Department ("JHS") and its supervisor, Richard Pennington, PHSS.  This matter comes before the Court upon plaintiff's motion for a preliminary injunction to require the defendants to provide him with "proper medical attention for [his] pain issues, and proper medication to alleviate the pain," Dkt. 10, as well as plaintiff's related "motion requesting verification of a urine sample," Dkt. 19, and "motion for preliminary injunctive relief regarding medical treatment and medication," Dkt. 20.  Having considered the parties' briefing, the governing law, and the balance of the record, the Court recommends that plaintiff's motions requesting injunctive relief be DENIED.

REPORT AND RECOMMENDATION - 1

## II. DISCUSSION

A. <u>Plaintiff's Request for Preliminary Injunctive Relief</u>

In plaintiff's amended complaint, he alleges that the defendants violated his Eighth Amendment rights by acting with deliberate indifference to his extreme pain. Specifically, he asserts that he has been wrongfully denied prescribed pain medication (Vicodin), as well as specialist treatment for his chronic ulcerative colitis. Plaintiff alleges that although he has verbally complained of abdominal distress at every medical examination, filed written grievances, and the defendants "received proof of my medical conditions" from the Sunnyside Community Hospital, JHS has continued to deny plaintiff access to his prescribed pain medication and specialist care. Mr. Pennington has also personally denied plaintiff's grievances. Finally, plaintiff asserts that the defendants have also denied treatment, special sleeping accommodation, and pain medication for his documented lower back pain. *Id*. at 1-2.

In his motion requesting preliminary injunctive relief, plaintiff asserts that he has "continually attempted to get relief for my considerable pain from Jail Health Services, with no success. Both my abdominal issues, as well as my lower-back issues require specialist attention." Dkt. 10 at 1. He asserts that "a general practitioner should not make decisions about conditions that require a specialist's attention," and "[y]et here they are continuing to do exactly that, with 'deliberate indifference' to the pain that they have forced me to endure for 7 1/2 mo[s.] now." *Id*. As a result, he requests "a preliminary injunction (under Federal Rule of Civil Procedure 65(a)), so that I may get the proper medication attention for my medical issues, and proper medication to alleviate the pain in the mean-time (sic). I am very concerned that permanent damage may be occurring due to utter disregard for my immense physical pain." *Id.*

In his reply brief, plaintiff further asserts that the declaration of Ben Sanders, M.D., which defendants submitted in opposition to his motion, contains several untruths. Dkt. 18. Specifically, plaintiff denies admitting to JHS staff that he is chemically dependent on marijuana and methamphetamine. He states that he "made it quite clear that the only 'drug' I use is marijuana . . . [and] the 'other substance' in my system was from 'laced' marijuana[.]" *Id*. Plaintiff also asserts that Dr. Sanders' declaration "make[s] it seem as if I was not receiving any Vicodin past 'mid-February 2012,' whe[n] in fact I was receiving it though April of 2012 at the rate of 84 pills (7.5 mg) for 4-weeks. This can be verified with the pharmacy at Yakima Valley Farm Workers Clinic." *Id.* In addition, plaintiff argues that the defendants "are trying to keep the focus of this litigation upon the denial of 'opioid analgesic' medication, and their basis behind denying any." *Id*. Plaintiff asserts his primary goal is "to identify and treat the medical issue that is causing the pain" through access to specialists who are "not associated with [Jail Health Services]." *Id*. at 1-2. Plaintiff therefore asks "to be evaluated by a doctor with specialized training in spinal care, i.e. a chiropractor, and for measures to be taken to discover the source of my abdominal pain." *Id*.

In plaintiff's related January 23, 2013 motion "requesting verification of the urine sample," plaintiff asks the Court to order the defendants to verify the drug test results from the May 17, 2012 urine sample discussed in Dr. Sanders' declaration. Dkt. 19 at 1. Plaintiff asserts that Dr. Sanders' declaration provides that the urine sample tested "positive only for methamphetamine," but plaintiff had been taking Vicodin "for months prior to my arrest, and in fact, was administered Vicodin during my hospital visit on May 15, 2012." *Id*. In addition, plaintiff asserts that his urine sample should have tested positive for "THC, as well as hydrocodone." Plaintiff states that "I had assumed that the marijuana I had been smoking . . . was 'laced.' The simple fact is, the urine sample they are referring to cannot have come from

REPORT AND RECOMMENDATION - 3

my body, for it did not contain THC nor hydrocodone.  I would also add that my THC-levels should have been VERY high, as I was smoking a substantial amount of marijuana (on a daily basis) for several weeks prior to my arrest." *Id*.

Finally, on February 4, 2013, plaintiff filed a duplicative motion requesting preliminary injunctive relief for "proper medical treatment and proper medication." Dkt. 20.  In that motion, he reiterated his fear that his intestinal issues "could turn out to be permanently damaging, or even potentially fatal," and stated that his pain in his lower back is "far worse now than at any previous time in my life[.]" *Id.*  He further argued that it is in the public interest to ensure that he "does not have endure physical suffering (with the potential of permanent damage), and a lack of proper medical care[.]" *Id.*

B.  Defendants' Opposition

In support of their brief in opposition to plaintiff's motions, defendants filed declarations from Cindi Port and Ben Sanders, M.D.[1]  Ms. Port, who is the defendants' attorney, asserts that the defendants were never served with a copy of plaintiff's December 31, 2012 motion seeking a preliminary injunction, and therefore defendants only learned of plaintiff's motion on January 14, 2013 via PACER. Dkt. 16 at ¶¶ 4-5 (Port Decl.).

Dr. Sanders is a staff physician and Medical Director of the JHS program. Dkt. 17 at ¶¶ 2-3 (Sanders Decl.).  In his declaration, Dr. Sanders asserts that "[a]t the time of his [B]ooking and Receiving Screening on May 17, 2012, Mr. Bennett reported a history of ulcerative colitis . . . [and] abdominal pain without diarrhea.  He reported that he was prescribed Vicodin . . . for pain, and he had on his person Asacol, a medication which is used

---

[1] Plaintiff's January 23, 2013 motion requesting verification of the urine sample, Dkt. 19, and February 4, 2013 request for injunctive relief, Dkt. 20, were both filed after the defendants' filed their response to plaintiff's initial request for injunctive relief.  However, the Court finds these requests by plaintiff sufficiently related to rule on all three of plaintiff's motions seeking injunctive relief at the same time.

REPORT AND RECOMMENDATION - 4

to treat inflammatory bowel disease . . . His examination in intake was negative for signs of complications from ulcerative colitis or other illness." *Id*. at ¶ 6. Dr. Sanders also asserts that "Mr. Bennett provided a urine sample on May 17, 2012 for urine toxicology testing for clinical reasons which was positive only for methamphetamine." *Id*. at ¶ 8. Dr. Sanders' declaration then proceeds to describe the treatment plaintiff has received for his complaints throughout his incarceration at the King County Jail. Except for plaintiff's arguments discussed above, plaintiff has not contradicted Dr. Sanders' account of his treatment.

Specifically, due to plaintiff's reports of abdominal pain and chronic low back pain, plaintiff was seen in the JHS medical clinic by a medical doctor on May 18, 2012. At that time, "his examination was negative for signs of complications from ulcerative colitis or other illness, and his functional status was described as normal." *Id*. at ¶ 7. Plaintiff was prescribed Asacol and acetaminophen, and "outside medical records were requested from the site that Mr. Bennett reported he had been receiving care." *Id.* When plaintiff "complained of back pain not helped by the acetaminophen" two days later, a medical provider also ordered a course of ibuprofen for plaintiff. *Id*. at ¶ 9.

On May 22, 2012, records from the Sunnyside Community Hospital Emergency Room were reviewed by a JHS medical provider. Dr. Sanders asserts that "these records revealed that Mr. Bennett reported abdominal pain on May 15, 2012 after he was arrested, and on arrival at the hospital reported that he had been having pain for two years, with a part history of ulcerative colitis and diverticulitis." *Id*. at ¶ 10. A CT scan taken that day "showed diverticulosis without diverticulitis, and there was no evidence of anemia, but he did have an elevated white blood cell count suggesting inflammation. He was released from the emergency room on May 15, 2012, with prescriptions for ten days of antibiotics . . . as well as ten tablets

REPORT AND RECOMMENDATION - 5

(about two days worth) of hydrocodone/acetaminophen, dosed at one tablet ever four hours as needed for pain." *Id.*

Dr. Sanders reports that plaintiff "continued to report abdominal and back pain, and was seen in the JHS medical clinic by various providers, including me on June 21, 2012. He ultimately endorsed methamphetamine use and chemical dependency. His examination was again benign, and he demonstrated normal functional status." *Id*. at ¶ 12.[2] Dr. Sanders asserts that he advised plaintiff that per JHS clinical practice guidelines it was inappropriate to prescribe opioid pain medication such as Vicodin for chronic pain management, especially in light of plaintiff's chemical dependency, and discussed non-medication approaches to managing plaintiff's abdominal and back pain. In addition, Dr. Sanders "confirmed with additional complete blood count and chemistry panel testing that he had no sign of bleeding or inflammation." *Id*. at ¶ 12. Dr. Sanders asserts that "since his functional status was normal, there was no indication for prescription medications of any kind for chronic pain, including opioid and non-opioid pain medications." *Id.* Nevertheless, Dr. Sanders referred plaintiff to the Harborview Medical Center Gastroenterology Clinic for "their next available appointment, since he had known inflammatory bowel disease and history of diverticulosis and he was in need of routine specialty clinic follow-up." *Id.* at ¶ 14.

---

[2] Dr. Sanders explains that the JHS Clinical Practice Guideline for Chronic Pain Management describes "functional status of the patient as the primary measure of success of a chronic pain management plan, and states that chronic pain management in the jail will de-emphasize use of opioid analgesics." *Id*. at ¶ 4. "Normal functional status includes the ability to ambulate and transfer . . .without assistance, ability to perform activities of daily living (e.g., bathing, dressing, eating, toileting) without assistance, and the absence of apparent disability relate to neurological or musculoskeletal disease. [It can] exist in the presence of reported symptoms (e.g., pain numbness, other sensory disturbances) and can exist in the presence of known tissue abnormalities (e.g., a patient may have defined herniated lumbar discs, but have no functional deficit associated with the findings)." *Id.* at ¶ 5.

REPORT AND RECOMMENDATION - 6

Following plaintiff's June 21, 2012 visit with Dr. Sanders, plaintiff was seen by the JHS medical clinic five more times. During these visits, plaintiff received "repeat laboratory testing (complete blood counts, chemistry panels, and sedimentation rate, which is a test for the presence of inflammation) which has confirmed the absence of bleeding and inflammation. *Id.* at ¶ 13. Plaintiff's prescriptions included a laxative, fiber to help regulate his bowel pattern, short courses of acetaminophen for pain, and the antidepressant Cymbalta (which has also been shown to help some patients manage chronic pain). *Id.* at ¶ 13-14.

Dr. Sanders further asserts that records received by JHS from the Yakima Valley Farm Workers Clinic reflected entries indicating plaintiff's "Suspicious Drug Seeking/Abusing Behavior," and directing "No Meds Until Urine Drug Screen Negative," in addition to diagnoses of "ulcerative colitis, divertulosis and diverticulitis, and uncomplicated herpes simplex." *Id.* at ¶ 17. Dr. Sanders asserts that plaintiff's prescription for Vicodin was related to his abdominal pain rather than his back pain, and spans "from January 2012 to mid-February 2012." *Id.* In addition, a February 16, 2012 progress note documents plaintiff's report of using methamphetamine and marijuana in the past two days, recent use of Adderall, and an admission "to using someone else's urine multiple times in the past with his parol (sic) officer." *Id.* This was the last progress note included in the records sent to JHS. *See id.*[3]

On November 14, 2012, plaintiff was finally seen in the Harborview Medical Center Gastroenterology Clinic by Lisa Strate, M.D. *Id.* at ¶ 14. Dr. Strate concluded that plaintiff's "symptoms were not consistent with an ulcerative colitis flare," and she recommended fiber for bowel regulation and a colonoscopy. *Id.* Dr. Strate performed the colonoscopy on November 21, 2012, and found "no evidence of active ulcerative colitis." *Id.* at ¶ 15. She opined that

---

[3] The Court notes that because the February 16, 2012 progress note was apparently the last note sent to JHS by the Yakima Valley Farm Workers Clinic, these notes do not contradict plaintiff's claim that he was actually prescribed Vicodin through April 2012.

REPORT AND RECOMMENDATION - 7

plaintiff's pain might be related in part to constipation, and recommended Miralax, a type of laxative. *Id.* However, as plaintiff refused the medication on occasion, the one-month trial prescription was not continued. *Id*. at ¶ 16.

Based on the above, Dr. Sanders opined that plaintiff has received appropriate evaluation and treatment by JHS medical staff, as well as outside physician providers. *Id*. at ¶ 19. Specifically, Dr. Sanders points out that plaintiff has consistently demonstrated normal functional status in jail, and "when he was seen in the Harborview Medical Center gastroenterology clinic, there was no indication for prescription medication for chronic pain management, either opioid or non-opioid type." *Id*. at ¶ 18.

### C. Legal Standard for Preliminary Injunctions

A preliminary injunction is an "extraordinary and drastic remedy" that is never awarded as of right. *Munaf v. Geren,* 553 U.S. 674, 689–90, 128 S.Ct. 2207, 2219, 171 L.Ed.2d 1 (2008) (citations and quotation omitted). Instead, the instant motion requires the court to "balance the competing claims of injury and . . . the effect of the granting or withholding of the requested relief." *Winter v. Natural Res. Def. Council,* 555 U.S. 7, 129 S.Ct. 365, 376, 172 L.Ed.2d 249 (2008) (quoting *Amoco Prod. Co. v. Gambell,* 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987)).

A plaintiff seeking a preliminary injunction must establish the following: (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury to the plaintiff if injunctive relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest. *Id.* (citations omitted). Moreover, a plaintiff must show more than a mere "possibility" of irreparable harm, but instead must "demonstrate that irreparable injury is likely in the absence of an injunction." *Id.* at 375 (emphasis and citations omitted). As stated by the Ninth Circuit Court of Appeals: "A preliminary injunction is proper

REPORT AND RECOMMENDATION - 8

if there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *M.R. v. Dreyfus,* 663 F.3d 1100, 1108 (9th Cir. 2011) (citing *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131–32 (9th Cir. 2011)).

"At a minimum, a plaintiff seeking preliminary injunctive relief must demonstrate that it will be exposed to irreparable harm." *Caribbean Marine Servs. Co. v. Baldridge,* 844 F.2d 668, 674 (9th Cir. 1988). "Speculative injury does not constitute irreparable injury sufficient to warrant granting preliminary relief. A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Id.* (internal citation and other cited sources omitted; emphasis in original). Also, as noted by the United States Supreme Court, "'[i]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion.'" *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 2948, pp. 129–30 (2d ed. 1995)) (emphasis added by Supreme Court).

D. <u>Plaintiff Has Failed to Satisfy the Necessary Elements for Injunctive Relief</u>

Even putting aside plaintiff's apparent failure to properly serve the defendants with a copy of his motion, the Court finds that plaintiff fails to satisfy the necessary elements for a preliminary injunction. First, at this early stage of the litigation, the Court finds that plaintiff has not demonstrated a likelihood of success on the merits in this case. With only minor exceptions, plaintiff does not challenge Dr. Sanders' description of the medical treatment plaintiff has received during his incarceration. As described in detail above, this treatment has

REPORT AND RECOMMENDATION - 9

included numerous visits with JHS staff, evaluation and treatment by a gastroenterologist at the Harborview Medical Center Gastroenterology Clinic, and medication.

Specifically, when plaintiff was admitted to the King County Jail on May 17, 2012, his examination was negative for signs of complications from ulcerative colitis or other illness. Dkt. 17 at ¶ 7 (Sanders Decl.). A CT scan taken at the Sunnyside Community Hospital Emergency Room two days before his incarceration had also "showed diverticulosis without diverticulitis, and there was no evidence of anemia[.]" *Id*. at ¶ 10. As soon as JHS learned that plaintiff had been prescribed a course of antibiotics because his May 15, 2012 testing had revealed some evidence of inflammation, plaintiff was provided with the prescribed course of antibiotics.

Following his incarceration, plaintiff was treated by the JHS medical clinic on at least six separate occasions. At each of his examinations, plaintiff demonstrated normal functional status, and his blood tests and chemistry panels showed that he had no signs of bleeding or inflammation which would suggest worsening of his abdominal condition. *Id*. at ¶¶ at 12-13. Despite these normal findings, plaintiff was provided with specialist care at the Harborview Medical Center Gastroenterology Clinic in light of his confirmed inflammatory bowel disease and history of diverticulosis. *See id.* at ¶ 14. Dr. Strate, who is employed by Harborview Medical Center and not JHS, concluded after performing a colonoscopy that plaintiff's symptoms were not consistent with an ulcerative colitis flare, and recommended treatment with laxatives rather than opioid pain medication. *Id*. at ¶¶ 14-15. Thus, although JHS has denied plaintiff's requests for opioid pain medications, plaintiff has been provided with recommended laxatives, fiber, Cymbalta, and acetaminophen/ibuprofen to manage his pain. *Id*. at ¶¶ 13-14.

Based on this evidence, the Court cannot conclude that plaintiff is likely to succeed on his claims that the defendants have acted with deliberate indifference to his extreme pain by

REPORT AND RECOMMENDATION - 10

denying prescribed pain medication as well as specialist treatment for his colitis.  Similarly, plaintiff has not alleged any facts, aside from expressing his desire to see a chiropractor and asserting that his back pain is "far worse now than at any previous time in my life," showing that the defendants provided constitutionally inadequate medical care for his lower back.  Dkt. 20 at 1; *see* Dkt. 18 at 2.

Second, the Court finds that plaintiff has failed to show a likelihood of irreparable injury absent the requested relief.  As mentioned above, speculative injury is insufficient.  Without more, plaintiff's "concern[] that permanent damage may be occurring" due to his pain is insufficient to establish exposure to irreparable harm.  Dkt. 10 at 1; *see* Dkt. 20 at 1 ("I am in fear . . . [my condition] could turn out to be permanently damaging, or even potentially fatal."). *See also Baldridge,* 844 F.2d at 674.

Finally, plaintiff fails to allege any facts establishing that the balance of equities tips in his favor, or to show that an injunction would be in the public interest.  Plaintiff's conclusory assertions on these points are not persuasive.  *See* Dkt. 20 at 1.  Accordingly, plaintiff fails to establish his entitlement to preliminary injunctive relief.

E.   Plaintiff's Motion for Verification of his Urine Sample

Similarly, plaintiff has failed to show that he is entitled to relief with respect to his request for verification of his urine sample.  Dkt. 19.  As discussed above, plaintiff asks the Court to verify that plaintiff's urine sample obtained on May 17, 2012 was actually his urine, and not the urine of another individual, because defendants asserted that it only tested positive for methamphetamine and plaintiff believes it should have also tested positive for THC and hydrocodone.  *See id.*  Under the legal standards articulated above, plaintiff has not shown any entitlement to the relief requested.

REPORT AND RECOMMENDATION - 11

Plaintiff is advised that he can seek additional information from defendants pertaining to this urine sample, if he so chooses, during discovery. For example, he can ask for further information regarding the results of his urine sample through the use of interrogatories.

### III.   CONCLUSION

For the reasons set forth above, the Court recommends that plaintiff's motions requesting preliminary injunctions, Dkts. 10 and 20, and related motion for verification of urine sample, Dkt. 19, be DENIED. A proposed order accompanies this Report and Recommendation.

DATED this 6th day of February, 2013.

JAMES P. DONOHUE
United States Magistrate Judge